Alexander & Betts vs. Merry.

## ALEXANDER & BETTS vs. SAMUEL MERRY.

1. It is not necessary that an officer in certifying the acknowledgment or proof of a deed, should use the exact words of the statute. A substantial compliance with the statute is sufficient. As where the statute requires the officer to certify that the person acknowledging a deed "was *personally known* to him," it is sufficient if he certify that "he was known to him."

2. A sheriff's sale is within the statute of frauds, and until a deed is executed the fee is in the debt.

3. Although a sheriff's deed is within the statute of frauds, yet a sale by sheriff is not void, although no deed or memorandum in writing be made. When a deed is made, it will relate back and take effect from the sale.

4. Such relation back will, however, only affect parties or privies to the sale, and will not at law hold against a stranger.

## APPEAL from St. Louis Circuit Court.

SPALDING & TIFFANY, for Appellants.

### POINTS AND AUTHORITIES.

1. The deed from Janes to Loper was improperly admitted in evidence, it not having been sufficiently proved; Rev. Code, 121, sections 14, 15, 16.

There is a failure in the certificate to alledge the identity as the law requires; and also it is not stated that the clerk *personally knew the subscribing witness, &c.*

2. The deed from Loper to Merry was improperly admitted in evidence, as it was not proved according to law; Rev. Code, 121. The certificate on this deed does not show that the witness proved any execution of it. He merely proves *identity*.

3. The deed of sheriff Walker, the successor of Brown, who sold to Gamble, passed the title of the lot in question. This point has been considered in the supreme court and decided adversely to us. See the cases of Evans vs. Wilder, 5 Mo. Rep. 313; same vs. same; 7 Mo. Rep. 359; Evans vs. Ashley, 8 Mo. Rep. 177.

4. The deed made by sheriff Brotherton on petition and order of the circuit court, made in August, 1842, passed the title of the lot in question; Rev. Code, p. 260, sec. 51; old Rev. Code, p. 370, sec. 23; Geyer's Digest, p. 269, sec. 74; 1 Ed. Com. 121, sec. 49. *First.* The case of expiration of office is within the equity of the act; 7 Mo. Rep. 359, at page 366; 8 Mo. Rep. at page 182-3. *Second.* The acts in

force in 1821, 2, 3 and 4, respecting the mode of getting sheriff's deed, on death or removal of sheriff, provided no mode of getting the deed in case of the expiration of his office; though the reasons are as urgent in the latter as former: hence the necessity of construing the word *removal* so as to embrace the case. *Third.* The statutes expressly provide for the case; Rev. Code of 1835, page 385, sec. 36 and 38, and page 379, sec. 1; Rev. Code of 1825, page 500, sec. 13. These acts show that the right acquired by Gamble's purchase was preserved, and the mode of perfecting it, by getting a deed, is also preserved.

5. The deed by Brown, the sheriff, (who made the sale) after his office had expired, passed the title. This deed is dated 15th September, 1842. *First.* There never had been any provision in the statutes for obtaing a sheriff's deed, in cases of sale and expiration of office before the deed made, until the old Rev. Code, which took effect in 1825. *Second.* But there was, as early as 1807, a provision enacted which has been continued down to the present time, providing for getting the deed where the sheriff sells and *dies*, or is *removed*, before executing his deed; see Edwards Com. 129; Geyer's Dig. 269 and the Codes. *Third.* In the Code of 1825, and also of 1835, it is provided, that the sheriff if he commences the execution shall complete it; and thus may make the deed at any time after, if he has only began to execute the writ before he goes out of office. *Fourth.* Hence the inference that the law makers contemplated in 1807, that the sheriff, if he had begun to execute the writ, should go on to complete it, even after the expiration of his office. *Fifth.* The reasons for this inference, are the necessity of the case, the silence of the written law, the propriety of the completion of the writ by the person who commenced it, and was actually perhaps executing it when his office expired; and the fact that the same circumstances have caused the legal mind of England to adopt the same unwritten law, as well as of many of our sister States; 5 Har. & John. 69, sheriff levies on property and goes out of office; the *venditioni exponas* must be directed to him and not to his successor; 2 Bac. Abridgement, 739, the sheriff that commenced execution must proceed with same; Watson on Sheriff, 61 (5 Law Lib'y, 55) to same effect; 6 Bac. Ab. 161; 2 John. Chy. Rep. 179, 180; 4 Bibb's Rep. 21, Allen vs. Trimble, a sheriff's deed for lands, made by him after he was out of office, held valid on general principle; 3rd Cowen's Rep. 208. The officer who received and levied the execution must perfect it, the whole proceeding being considered one thing; and therefore the sheriff, though out of office, must receive the redemption money, &c.; 3rd Cowen's Rep. 95, Jackson vs. Collins, sale on execution of lands com-

pleted after sheriff was out of office, he having commenced while in, and held good; 3 Scammon's Rep. 551, if an execution is levied while it is alive, the sale may be made afterwards, and it is the duty of the officer that levied to proceed and sell, no matter what becomes of the execution; 8 Mo. Rep. 177, Evans vs. Ashley, where this doctrine is recognized, (i. e.) that the officer commencing must complete the execution at common law, even though his office has expired. *Sixth.* If such were not the law before, yet it became the law, being one of the principles of the common law, introduced in 1816; Geyer's Digest, 124; 1st Edwards' Compilation, 436, act introducing the common law. If the Spanish law was silent on this subject, then this act by its very terms brought in the common law. *Seventh.* The common law, applicable to past acts, is not repealed by the codes of 1825 or 1835 as they are prospective, and as those codes provide for the validity of past acts. *Eighth.* Our statutes preserve the right.

6. The fact that the giving the deed of sheriff was prohibited by the act of 1821, till the lapse of three years from the sale, does not prevent the application of the principle, that the officer who begins the enforcement of an execution must complete it, because, *First*, The act suspending the execution of the deed, and providing for the execution by the succeeding sheriff, having been repealed 11th January, 1822, (see Edwards' Compilation, page 863,) the common law was restored. *Second*, The act for the relief of debtors and creditors was unconstitutional, and therefore the sale to Gamble was absolute, and Brown had the right to make his deed as sheriff as soon as the sale was made.

The judgments on which the sale was made were rendered before the passage of the act, and one of the executions was also issued before the 28th June, 1821, which was the date of the approval of that act; 1 Howard's Rep. 311, Brown vs. Kinzie; 2 I bid 608, McCrackin vs. Hayward. These cases show that any State law, impairing or diminishing the rights of a creditor under a previous contract or judgment, is repugnant to the federal constitution. The act aforesaid did impair the creditors right, for under it he could only sell a redeemable interest, with a right of occupancy in the debtor for several years, whereas before, he could have sold the absolute and indefeasible title in fee with immediate right of possession in the purchaser; 5th Mo. Rep. 518. The court say, that if the act was unconstitutional, then the sheriff's sale would pass the title absolutely.

7. The failure of the sheriff making the sale to mention the purchaser, and describe the lands sold in the return on the execution, does not

vitiate the sale. *First.* The general principle established, is that the title of the purchaser at sheriff's sale is not affected by irregularities; 10 Peter's Rep. 450, Voorhees vs. Bank of United States; 8 John. Rep. 351. It is not affected by irregularly of execution, nor by any matter, subsequent to the sale, occurring between the parties; 1 Cowen, 711. Sale good on execution issuing after judgment rendered a year and a day, without any renewal, even though the execution shall be afterwards set aside; 9 Cowen, 182; 4 Wend. Rep. 588—462; 10 John. 381; 2 Ten. Rep. 44; 1 Cowen, 622, where the judgment has been previously paid and satisfied, yet the purchaser at sheriff's sale will hold, unless he had notice of such payment at time of his purchase; 1 John. Rep. 45; 9 Cowen, 536–182; 4 Wend. 588; 8 Wend. 676. *Second.* And this irregularity, if it be one, has been considered by courts, and held not to affect the *bona fide* purchaser's title; 4 Wend. Rep. 462. It is not necessary on the return of the execution to describe the lands sold; 1 Johnson's cases, 153. An incorrect return by sheriff of *fi. fa.* will not defeat the sale, or prejudice the purchaser's title. The return is not essential to the title of the purchaser; (See page 155.) 1 Taylor's N. C. Rep. 10. A sale of land by the sheriff is valid, though no return is made of the execution, 1 Murphy, North Car. 507. The title of purchaser at sheriff's sale is not affected by a false return of the sheriff, that another person purchased, 6 Har. & John. 182. If the return of the sheriff does not set out the name of the purchaser, and there is no description of the land sold, the sale will not thereby be vitiated. The return of the sheriff does not give title.

8. The statute of frauds has no bearing upon the validity of Brown's deed ; for though that statute requires a memorandum in writing, in order that a sale of lands be valid, and we should admit that it is applicable as well to sheriffs' as to other sales; yet it does not enact that sales shall be void, unless the memorandum or deed be made *at time of the sale.* The question therefore does not arise, which might become important, if no deed had been made, and we now called on the court to cause a deed to be made.

It was decided in New York that no title passed by a sheriff's sale, unless some written instrument was executed; and this is true here, as well as in New York, for our acts require a deed to be made. But the sale is valid, whether a memorandum is made or not, and the court will hold it valid and compel the sheriff to make a deed.

9. Merry, the appellee, purchased with full notice of the sale to Gamble, under which the appellant derives title; all the deeds contain a reference to the sheriff's sale to Gamble. Brown's deed, therefore,

33

relates back to the time of sale as to him, and is a complete defence to the action; so that the judgment below should have been for the defendants.

20 John. 537, admits the general doctrine, that an estate created by execution of power, is to have relation back so as to take effect from the date of the power; but this is a fiction which is not to injure strangers. 15th John. Rep. 309: The sheriff's deed relates back to the time of the sale, though not executed till after the date of the sale. 3 Cowen, 75; 2 Wend. 507: A deed given by sheriff on previous sale on execution, relates back to, and in judgment of law, is executed at, the time of sale.

10. The notice to Merry of the sheriff's sale appears from the deeds to Merry, and Janes' deed to Loper, all of which refer to that sale, and whether they did or not, both Loper and Merry were chargeable with notice fom the record of the judgments against Janes, and of the executions and return thereon, and also from Walker, sheriff's deed, which recites the sale, and was recorded on the 17th December, 1824; and also from the possession by defendant below and those under whom they claimed. 2 Mass. Rep. 508; 4 Mass. Rep. 638; 6 Wend. 223: Possession is notice of the title under the Registry Acts. 4 Mo Rep. 62, Bartlett vs. Glasscock; 2 J. J. Marshall, 434: Such notice prevents Merry from availing himself of the principle, that no legal fiction shall work injury to innocent third persons.

11. The lapse of time does not prevent Brown, the former sheriff, from executing the deed, carying into effect the sale made by him, as against Merry who had notice, and risked his money on the purchase, as a speculation, with his eyes open. *First.* In practice, the sheriff's deed is seldom made at the time of sale, usually some days afterwards, and it has never been thought that the judgment debtor could alienate in the meantime. *Second.* It is not establishing a dangerous principle; for the late sheriff makes a deed which is valid only, where he had, while sheriff, made a sale, and valid only as against those who had notice of that sale. It is precisely, in principle, the same as if the contest was between Janes and the appellants; between the defendant in the judgment and the purchaser at sheriff's sale, where the purchaser took possession under the sale.

GEYER, for Appellee.

In support of the judgment of the circuit court, the appellee submits the following propositions:

Alexander & Betts vs. Merry.

1. The authority of a sheriff or other person, to sell and convey the real estate of another, depends wholly upon statute law. To make the conveyance operative, all the requisites of the statute must be complied with, and this must be shown by the evidences which the statute requires; none other will suffice; Parrington vs. Loring, 7 Mass. Rep. 388; Wilson vs. Loring, 7 Mass. Rep. 392; Davis vs. Maynard, 9 Ib. 242; Wellington vs. Gale, 13 Ib. 483; Williams vs. Avery, 14 Ib. 20.

2. In August, 1821, when the sale is said to have been made, the law required the sheriff to grant to the purchaser a certificate instead of a deed, and to sign and file for record a duplicate thereof in ten days, which should be taken as evidence of the facts therein stated. This certificate is indispensable; no other evidence of the fact of sale is admissble; Davis vs. Maynard, 9 Mass. Rep. 242; Parrington vs. Loring, 7 Ib. 388, and other cases above cited.

3. The certificate signed by J. K. Walker, deputy sheriff, is not a compliance with the law, it is not the act of the sheriff, and is a mere nullity. Evans vs. Wilder, 7 Mo. Rep. 359; Evans vs. Ashley, 8 Mo. Rep. 177. Being null, it does not and cannot be regarded as evidence of anything. It cannot be made the foundation of other proceedings or used as evidence of sale. Cow. & Hill's notes to Phillips, part 2 p. 1246-7.

4. The alleged sheriff's sale is not only without any evidence required by the statute, but there is not even a memorandum itself, as required by the statute of frauds. See Evans vs. Wilder, and Evans vs. Ashley above cited. Consequently the claim of appellants under that sale cannot be sustained at law or in equity. Miller vs. Henshaw 4 Dana, 329, 330; 2 Serg't & Raw. 455.

5. The deed of Walker is inoperative to pass Title. He had no authority to make it, if there had been evidence of the sale. Evans vs. Wilder, and Evans vs. Ashley, above cited.

6. The facts stated by a sheriff in his return, or in a deed made by him, are received as evidence, only because they are made on the responsibility of his official oath and bond. Statements which are not so made, whether by a sheriff in or out of office, are not evidence of the facts stated, even where oral evidence is admissible. The recitals therefore in the deeds executed by Walker, Brotherton & Brown, are no evidence, and as there is nothing else tending to show a compliance with the requisites of the law, the deeds are inoperative for that reason, if none other existed. Recitals of records do not dispense with their production. Cowen & Hill's notes, part 2, page 1291-2.

7th. If the recitals are received as evidence, still they are not suffi-

cient, because still it appears there was no certificate of the sale, and the executions recited are not those in virtue of which the levy was made, and the sale advertised; these defects are not supplied by the returns on the execution, or the exhibition of a copy of the advertisement.

8. Neither the deed from Brotherton, who was sheriff in 1842, nor that of Brown who had been sheriff in 1821, can operate to defeat the action of the plaintiff, because they were made after the commencement of the suit, and are withal unsupported by the evidence of authority to sell, and of sale which the law requires.

9. The order of the circuit court directing Brotherton, then sheriff, to execute a deed is a nullity—there being then no law in force authorizing such proceeding in the case. The statute in force in 1821, the time of sale, had been repealed some seventeen years before, and the statute then in force, R. C. 1835, sec. 49, 50, and 51, was in its terms prospective, and could not be made to operate retrospectively by the legislature, or the court, consistently with the constitution; besides if this had been the case of a sale after the passage of the act, still it was not a case of a sheriff having died, being removed from office, or becoming disqualified, and therefore not a case in which the court could act in an exparte proceeding at law. : Bur. 1456; 1 W. Black 451, §6; 3 Dal. 378; 1 Con. Rep. 16 ; Evans vs. Wilder, 7 Mo. Rep. 359; Evans vs. Ashley, 8th Mo. Rep. 177.

10. If the power of the circuit court to make the order is assumed, still the only question of fact, which that court could or did determine, is the payment of the purchase money. All other facts remain to be proved as before, and as in this case they were not proved, (the statements in the petition and recitals in the deed, being no evidence at least against the plaintiff below,) the deed is not supported by proof of compliance with the requisites of the law. Bac. A. Statute, 3 Dal. 378; 7 Mo. Rep. 359.

11. The deed made by J. C. Brown, who was Sheriff in 1821, is inoperative to pass title, because it is not supported by any evidence of a compliance with the essential requisites of a valid sale—his recitals are not evidence, because they are not a return or *quasi* return, made under the sanction of an official oath, or the responsibility of an official bond—and because the deed is the act of a private citizen, attempting to convey the property of another without the authority of law.

12. Brown had no power to make the deed by common law, because the seizure and sale of lands by execution were unknown to the common law ; they owe their introduction to statutes ; besides the common

law was not in force when the act of 1807 was passed, and that act, Geyer's Dig , page 269, sec. 74, makes provision for the very case at bar. Evans vs. Wilder, 7 Mo. Rep. 359. That act was repealed, and other provisions enacted in 1825, and afterwards in 1835, so that no part of the common law, if there had been any on the subject, ever was in force in this State.

13. The deed of Brown is not operative under any statute, because the act of 1807, and with it any common law power was taken away by the act of 1825, repealed subsequently by that of 1835, which was the only law in force at the date of the deed, and under that Brown could not act, because the power exists only in cases of sales subsequent to its passage.

14. The authority of J. C. Brown to make the deed, cannot be sustained by any supposed continuance of the operation of laws, common or statute, after their repeal. The repeal does not affect any act done, right accrued or established, or any proceedings commenced previously, but no law continues a power which might be given to or withdrawn at pleasure from any officer.

15. If the deeds of Brown and Brotherton, or either of them, can be regarded as operative, they cannot be made to operate before their execution and delivery, and so cannot affect the title of the plaintiff below, which had become vested many years before.

16. The proof of the deeds from James to Loper, and from Loper to plaintiff, is sufficient, and such deeds were properly received in evidence. Jackson, ex dem. &c. vs. Livingston, 6 John. Rep. 149; Jackson, ex dem., Wood vs. Harron, 11 J. R. 434; Jackson vs. Vickory, 1 Wend. 406; Jackson vs. Phillips, 9 Cow. 94; Jackson vs. Gumaer, 2 Cow. 552; Norman vs. Wells, 17 Wend. 136.

All that is required on the frame of certificates of proof or acknowledgments of deeds, is a substantial compliance with the laws under which they are made. They are to be liberally construed, and to be sustained if possible by legal intendment. Jackson vs. Stanton, 2 Cow. 552, 5..7; Loughborough vs. Parker, 12 Serg't & R. 48; Forman vs. London, 13 do. 386; Hall vs. Gillings, 2 Har. & Ja. 390; Talbot's lessee vs. Simpson, 1 Peter's Rep. 191; McIntosh vs. Ward, 5 Bin. 296; Shaller vs. Brand, 6 do. 435; Nantz vs. Bailey, 3 Dana 113, 119; Phillips vs. Ruple, Litt. Sel. Cases 221; lessee of Hunter vs. Bryan, 2 Murphy 178; Horton vs. Hagler, 1 Hawke's Rep. 48. The objection to the deed was too general. 17 Wend. 142; Real vs. McAlister, 13 Wend. 109; Ohio Ins. Co. vs. Emerson, 5 Mill La. Rep. 295, 300; Mandeville vs. Perry; 6 Call. 78.

SCOTT, J., delivered the opinion of the court.

In July, 1842, Merry brought an action of ejectment against Betts for a lot of ground in the city of St. Louis, and at the return term of the writ, on motion, B. W. Alexander was made a co-defendant. Merry obtained judgment, and Betts and Alexander appealed to this court.

Merry claimed title through Joseph Janes, whose ownership was the source of title to both parties in the cause. By a deed made the 16th Dec., 1835, Janes conveyed all his interest in the lot to James Loper. This deed recited the fact that the lot thereby conveyed, had been sold under the redemption law to A. Gamble, Book M, page 182. It was proved on the 31st January, 1838, before the clerk of the district court of the United States for the eastern district of Louisiana, by Wm. T. Lewis and Wm. Y. Lewis, the subscribing witness thereto. The certificate of proof stated that the witnesses were known to the officer to be the persons whose names were subscribed to the deed, who, under oath, declared that Joseph Janes was the real person whose name was subscribed to the said deed as a party thereto, and that he signed the same in the presence of the said witnesses, and that they subscribed thereto as witnesses thereof. This deed was recorded on the 22d June, 1838. By deed bearing date on the 21st day of January, 1826, Loper conveyed one-half of the lot to Samuel Merry. In this deed it was also recited that the lot had been sold under the redemption law to A. Gamble, as recorded in book M, page 182. This deed was proved before the clerk of the circuit court of St. Louis county by John Riggin, a subscribing witness thereto, on the 23d of October, 1837.

The certificate of proof stated that John Riggin, personally known to me to be the real person whose name is subscribed to said foregoing instrument as a party thereto, who, being by me duly sworn, upon his oath declared that James Loper, whose name was subscribed to said instrument as a party thereto was the real person who executed the same, and that the said Riggin signed said instrument as a witness thereto.

John W. Walsh, public administrator of St. Louis county, by virtue of an order of the county court of St. Louis county, made on the application of the said Walsh, administrator of said Loper, on the 2d day of September, 1840, for the purpose of paying the debts due by Loper, sold and conveyed to Merry all the lot in dispute. In the proceedings of the county court relative to the sale of this lot, whenever the lot was described, it was represented as having been sold to A. Gamble, under the redemption law, book M, page 182.

It was admitted that the defendant Betts was in possession of the lot in controversy, under Alexander, at the commencement of this suit.

Loper's death, and the administration of his estate by Walsh, the public administrator, were admitted.

The plantiff also gave in evidence a notice in writing, signed by Loper, addressed to B. W. Alexander, informing him of his claim to the lot in controversy, and warning him that he would pay for no improvements made on the lot.

The plaintiff, on his part, offered in evidence records of two judgments recovered in the circuit court of St. Louis county, on appeal and *certiorari* from justice's courts. One in the name of James P. Parker against George W. Ferguson, and Joseph Janes, his security in the appeal bond, for $56 02 1-2, with interest and costs, and dated 16th May, 1821,—the other in the name of Peter Ferguson, against Joseph Janes and William H. Pococke, the security in the bond for a *certiorari* for the sum of $43 50, and costs, and dated on the 31st May, 1831. On these judgments, executions severally issued on the 16th and 31st May, 1821, under and by virtue of which, as well as of other executions, as appears by the advertisement of sale, the lot in controversy was sold at sheriff's sale, on the 21st day of August, 1821, to A. Gamble, who received from the sheriff a certificate, of which the following is a copy:—

"I, Joseph Brown, sheriff of the county of St. Louis, to all whom it may concern, certify that by virtue of sundry executions to me directed, from the circuit court of St. Louis county, viz : one in favor of Peter Ferguson—one in favor of James P. Parker—one in favor of John Keesucker—and one in favor of C. Wilts, adm'r against Joseph Janes, returnable to August term 1821, I exposed to sale as the law directs, the following property, viz : A lot of ground in the town of St. Louis, (the lot in controversy,) purchased of Moses D. Bates, containing sixty feet front on the Second or Church street, by one hundred and fifty feet deep, bound on the east by the said Church street, on the south and west by lots of Louis Lemonde. And that Archibald Gamble being the highest and last bidder, the same was struck off to him for the sum and price of twenty dollars, and that the said Archibald Gamble will, on the 21st day of February, 1824, be entitled to a deed therefor, unless the same shall be redeemed, by virtue of the act of Assembly, entitled 'an act for the relief of debtors and creditors.'

JOHN K. WALKER, D. Sh'ff.

Recorded this 6th day of Sept., 1821,

ARCHIBALD GAMBLE, Clerk."

On the 9th day of November, 1824, John K. Walker, who was successor in office to Joseph C. Brown, who was the sheriff when the sale was made, in pursuance of the foregoing certificate, executed to Gamble a deed in the usual form, which was acknowledged in open court, and recorded.

Afterwards, in July, 1842, Gamble, under the provisions of the 51st section of the act concerning executions, petitioned the circuit court of the county of St. Louis, setting out so many of the foregoing facts as relate to the sale of the lot in controversy to him, and prayed that a deed might be made therefor, by the then sheriff of St. Louis county. The petition was granted, and Marshall Brotherton, the sheriff, on the 8th day of August, 1842, executed a deed to Gamble for the lot in dispute, which was acknowledged and recorded.

Afterwards on the 15th day of September, 1842, Jos. C. Brown, who was the sheriff when the sale was made to Gamble in 1821, executed a deed to him for the said lot, which was acknowledged and recorded.

By several *mesne* conveyances, the lot passed from Gamble to Alexander, the present owner, who has made improvements on it to the value of six thousand dollars.

The act for the relief of debtors and creditors, commonly called the redemption law, which was enacted on the 28th of June, 1821, provided that when any lands or tenements should be sold after the 15th July, 1821, by virtue of any execution already issued, or that might thereafter be issued, it should be the duty of the sheriff or coroner instead of executing a deed for the premises sold, to give to the purchaser a certificate in writing, describing the land purchased, and the sum paid therefor, and the time when a purchaser would be entitled to a deed therefor, unless the same should be redeemed, as was provided by the act; and the sheriff should, within ten days from the time of such sale, file in the office of the clerk of the circuit court of the county where the land was, a duplicate of such certificate, *signed by him*, for record, which should be taken as evidence of the facts therein contained, and should be considered as notice to subsequent purchasers and creditors.

A subsequent section of the same act, provided that the defendant might redeem the land within two and a half years from the time of sale, and if it should not be redeemed within that time by the defendant, then any creditor might redeem it within the three years, and within that time a creditor might redeem from a creditor.

The 8th section of the act provided that unless the land should be redeemed by the defendant or some of his creditors within three years

from the time of sale, then the sheriff or other officer or his successor in office, should complete the sale by executing a deed for the same to the purchaser.

On the 11th January, 1832, the above recited act was repealed, with a saving of the validity of all proceedings under it before the repeal thereof.

The defendant objected to the reading in evidence of the deed from Joseph Janes to James Loper, on account of the insufficiency of the proof, but the objection was overruled, to which an exception was taken. Objections were for the same reason made to the reading of the deed from Loper to Merry, but they were overruled.

The foregoing facts being thrown into shape of a special verdict, a judgment was rendered thereon for Merry the plaintiff, from which Betts & Alexander appealed to this court.

The first point in the cause, is that arising from the admission in evidence of the deed from Joseph Janes to Loper, which was objected to by the defendant, on the ground of the insufficiency of the proof. The statute directs that the certificate of proof, shall set forth as one of the matters thereof, that the subscribing witness was *personally* known to the officer granting the certificate. The certificate as above set forth omits the word *personally*, and merely states, that the witnesses were known to the officer. The question is, whether this omission renders the certificate fatally defective? The 12th section provides, that the grantor acknowledging a deed, shall be personally known to the officer, to be the person whose name is subscribed to the instrument as a party thereto. The 14th section provides, that no proof of a conveyance shall be made by a subscribing witness, unless such witness is personally known to the officer, to be the person whose name is subscribed to the instrument as a witness thereto. The next section provides, that no certificate of proof shall be granted, unless such subscribing witness shall prove that the person whose name is subscribed thereto as a party, is the person who executed the same. This section does not require, it will be seen, that the witness should have a personal knowledge of the grantor. But if the officer is satisfied in any manner by the witness, that he knew the grantor named to be the real party, he may take and certify the instrument. So the law itself would seem to use indiscriminately the term knowledge and personal knowledge. It is not easy to define what is personal knowledge, as contradistinguished from knowledge, uncoupled with that epithet. Instances may be stated wherein the difference is apparent; others may be imagined, where the distinction is not so easily drawn. No doubt the law intended, that

as the officer acted under oath in taking the proof of deeds, he should have knowledge of the identity of the grantor, or of the subscribing witness, as would enable him to swear, that the grantor or witness was the person he represented himself to be. Its object was to prevent one person from fraudulently personating another. It is much to be desired that every officer who takes the acknowledgment of a deed would conform literally to the law. But we know that the convenience of our people require that the taking of the acknowledgment of deeds, should be entrusted to those who are ignorant of the forms of the law, who will take a proper acknowledgment, and blunder in certifying it. Did it follow as a necessary consequence, that any acknowledgment improperly certified, had been in fact taken under such circumstances as were unwarranted by law, there would be no difficulty in settling this question. Because an officer omits to certify that the grantor was personally known to him, but merely says he was known, it cannot be inferred that the grantor was not personally known. The construction of certificates of knowledge, have frequently engaged the attention of courts, and they all seem impressed with the importance of extending a liberal construction to these instruments. In the case of Shaller vs. Brand, 6 Bin. 438, the supreme court of Pennsylvania says, we have always declared: "that it was sufficient, if the law was substantially complied with, and on any other principle of construction, the peace of the country would be seriously affected, as the certificates of the acknowledgments of deeds, have been generally drawn by persons who were either ignorant of, or disregarded the words of the act of assembly. The law must be complied with, but in construing it we shall always be inclined to support a fair conveyance if possible." In the case of Nantz vs. Bailey, 3 Dana, the court says, "it is not indispensible that the certificate should state the exact process of examination, in verbal detail, such particularity has never been observed or required. That they would not presume that the officer did not understand the statute, or comprehend his own certificate." The case of Jackson vs. Gumaer, 2 Cow. 556, is a case very similar to this. There the Judge failed to certify, that the "grantor was known to him to be the person described in, and who executed the deed." The chief justice in delivering the opinion of the court remarked, "I am unwilling to say that titles which depend for proof upon certificates thus drawn are to be put in jeopardy by the allowance of such a technical objection, for I cannot but consider the acknowledging officer drawing such a certificate, as possessing all the knowledge required by the statute. The summary of all that is to be found in the books on this question is that

a substantial compliance with the law, is all that is required. When this appears, the courts feel no inclination to disturb the land titles of the country by indulging a severity of criticism on the language of the certificates of the proof or acknowledgment of deeds. From the condition of many portions of this State, the disadvantages under which they labor in regard to legal information, and the necessity of entrusting the execution of the laws in many instances to inexperienced hands an application of these principles of construction, to certificates of acknowledgment or proof will not only be found wholesome, but indispensable to the peace and quiet of the country.

For the determination of this cause, we do not think it necessary to examine into the constitutionality of the law, for the relief of the debtors and creditors, or as it was called the redemption law. If it is considered without any reference to that law, the same difficulty arises from the statute of frauds, as is presented by the irregularity of the certificate of sale, which was issued to the purchaser under the provisions of the act for the relief of debtors and creditors. In the cases of Evans vs. Wilder, 7 Mo. Rep. and Evans vs. Ashley, 8 Mo. Rep. this court held that certificates of sale under the redemption law, similar to that in the record of this case were void, and that a deed executed by the successor in office of the sheriff who made the sale, was inoperative, on the ground that the law which authorized the successor to make a deed, was repealed before the execution of it. Grant that the redemption law was void, and that an absolute interest in the land was sold by the sheriff, and purchased by Gamble, then comes the statute of frauds, which if not as fatal as the nullity of the redemption law presents insuperable difficulties in the way of the defendant in this action. It has been held by this court that a sheriff's sale is within the statute of frauds. That by the sale alone, no interest in the land passes and that until a deed is executed, the fee is in the debtor. This opinion was not pronounced without authority to sustain it. In the case of Simonds vs. Catlin, 2 Caines' Cases 61, Judge Kent, in a State where there was no statutory enactment requiring the sheriff to execute a deed for land sold by him under execution, held that such a sale was within the statute of frauds, and that without a deed the title did not pass. The same doctrine was afterwards maintained in the case of Gratz vs. Catlin, 2 J. R. and is afterwards repeatedly recognized in the courts of New York. In a late case in the supreme court of S. Carolina, Christie vs. Simpson, 1 Richardson 407, it is held that a sheriff's sale of land under an execution, is within the statute of frauds, and

without a proper entry or memorandum in writing, the purchaser will not be bound.

Although sheriffs sales of land uuder an execution, are within the statute of frauds, yet that statute does not make penal contract void, it merely says that no action shall be brought on them.    In the case of Coughlin vs. Knowles, 7 Metcalfe, it was held that an oral contrect for the sale of land, is not utterly void by the statute of frauds, that although such a contract would not be regarded if made the foundation of a suit at law or equity, yet is · not a nullity.    The same doctrine is maintained in the case of Lane vs. Shackford 5th New Hampshire Rep. 133; McCowen vs. West, 7 Mo. Rep. 569.    Indeed, great would be the mischiefs of a contrary doctrine.    Now that which is void cannot be made good by relation.    After a sale of land by the sheriff under a judgment, the execution of a deed is frequently delayed for months and years, and yet as against the defendant in the execution, a deed after the lapse of that time has never been thought to be void.    If the deed did not relate back to the sale, what would there be to impart to it any validity at the time of its execution.    If the sale were considered as a nullity, the officer after the lapse of a reasonable time would have no more authority to make it than an utter stranger.    The case of Jackson vs. McCall, 3 Cow, 75, fully illustrates the doctrine of relation in regard to sheriffs deeds, and is one resembling this in most respects.    There the purchaser at sheriff's sale, which was made in 1818, did not receive a deed until 1823; one of the objections to the admission of the deed in evidence was, that it was not given in a reasonable time.    The suit was brought by a devisee of the defendant in the execution.    In that case, as in this, the purchase money had been paid.    The court held that the plaintiff being the devisee of the judgment, stood in the same relation to the purchaser at the sheriff's sale, that the debtor himself would have stood had he been alive. That it was a case in which the doctrine of relation was peculiarly applicable, there being no strangers or third persons whose interests could be affected by it.    That doctrine, continues the court, is this :  Where there are divers acts concurrent to make a conveyance estate or thing, the original act shall be preferred, and to this the other act shall have relation.    That the principle has been repeatedly recognized, that a deed executed in pursuance of a previous contract for the same premises, is good by relation, from the time of making the contract, so as to render invalid every intermediate sale or disposition of the land by the grantee.    That the consideration money was paid by the purchaser. He had done everything to entitle him to a deed.    The money must be

presumed to have been paid over by the sheriff to the plaintiff in the execution in satisfaction of the debt. That the essential and important part of the sheriff's duty had then been performed, and nothing remained but the formal act of delivering the deed, the purchaser having been in possession, as we have a right to presume from the day of sale. The lapse of time under such circumstances, and between these parties, can afford no objection either to the validity of the deed or to its relation back to the time of sale.

The facts presumed by the court in the case just cited, are in evidence in this case. The purchase money was paid by Gamble; it was paid over by the sheriff, and Gamble took possession of the lot shortly after the redemption had elapsed. So the only material difference between the case cited and that now before us, consists in the character of the parties to the suit. In the case cited the relation of the deed to the time of the sale affected a privy, in this case a stranger is affected. The doctrine is, that in *fictione juris, semper existit equitas*. Relation can only affect parties or privies, and not strangers. It is a general rule with respect to the doctrine of relation, that it shall not do wrong to strangers; Case vs. Digoes, 3 Caines 262; Jackson vs. Bard, 4 John. 230. Merry must be regarded as a stranger. Whether he had notice or not, and in what light he would be regarded in another form, we are not now called upon to determine. If one affected with notice should sell to another without notice, would not this involve all the equitable doctrine of notice, and would not a court of law feel itself embarrassed in determining questions of this kind?

It will be observed that no opinion has been expressed, as to the validity of the deeds executed by Brotherton & Brown. Assuming them to be operative, the difficulty above stated would prevent their operation against Merry. As to the suggestion that a party might go into a court of equity for a deed under such circumstances, it seems the statute of frauds would interpose obstacles to a purchaser, who should seek relief without a note or memorandum in writing of the sale. Without undertaking to determine whether the proceedings to obtain a deed from Brotherton were regular, or whether the deed from Brown was effectual, we must say we would be very loth to bring ourselves to the conclusion that there was no remedy in such cases.

The objection to the proof of the deed from Loper to Merry for half the lot in controversy is not noticed, because there was afterwards a deed to Merry for the entire lot, to which no objections were made.

The other judges concurring, the judgment will be affirmed.