THE OVERMAN SILVER MINING COMPANY, Appellant, v. THE AMERICAN MINING COMPANY, Respondent.

Certificate of Judge to Statement for New Trial.  Where a district judge certified at the end of a statement " that the foregoing is the settled and engrossed statement on motion for new trial of the above entitled cause ":  *Held*, that though not a literal compliance with the statute, such certificate was a substantial compliance and sufficient.

Presumptions in Favor of Judge's Certificate.  Where a district judge certified that a statement on motion for new trial was " the settled and engrossed statement on such motion ":  *Held*, that giving proper effect to the legal presumptions in favor of the action of the judge, the certificate implied that a proposed statement was presented; that it was unsatisfactory; that amendments were filed; that on due notice the judge considered and passed upon the same, allowing such as made the statement conform to the truth; and that the document was a fair and correct copy of such statement as amended.

Practice Act, Section 197—Meaning of " Settled " in Judge's Certificate.  The express requirement of the statute, that a judge's certificate to a settled statement on motion for new trial shall affirm its correctness, (Practice Act, Sec. 197) does not preclude such presumptions as fairly arise from the language actually employed; so that when a judge certifies that he has settled a statement, he in effect certifies that it is a true and correct statement.

Boundaries of Mining Claim—Charge·Apt to Mislead.  Where an instruction was given, in a case of dispute between two adjoining mining companies as to their boundary, that " when boundaries have been established defining and denoting the size and limits of the claim upon the surface, and for a long period have been recognized as such, the extent of the claim will be confined to the extent as manifested by such surface boundaries "; and the state of the testimony was such that the instruction applied to, or was apt to be understood by the jury to refer to, a fixing or recognition of boundaries accruing after the consummation of the original location and appropriation, and consisting merely in the declarations of superintendents and other officers not authorized to fix boundaries:  *Held*, error.

Mining Claims Not to be Reduced by Mere Declarations of Superintendents.  After a vested right to a mining company's claim has been acquired by a compliance with the laws, it is not held by so precarious a tenure as that it can be reduced by mere declarations of superintendents and officers.

EXTENT OF MINING COMPANY'S CLAIM—DECLARATIONS OF PRESIDENT. It seems that in a dispute as to the extent of a mining company's claim, the declarations of the president as to the position of the boundaries, if objected to, are not admissible in evidence.

APPEAL from the District Court of the First Judicial District, Storey County.

The plaintiff in its complaint in this action, which was commenced June 4th, 1869, set forth that it was and had been for more than five years the owner and possessor and entitled to the possession of a certain mining claim and quartz lode in the Gold Hill Mining District, in Storey County, commencing on the Comstock Ledge at the southern boundary of the claim of the Segregated Belcher Mining Company and running southerly twelve hundred feet; that it and those under whom it claimed had obtained possession and occupation thereof under the mining rules and customs of the district, and expended in labor and improvements thereon more than one thousand dollars; that defendant claimed to be the owner and entitled to the possession of the southerly four hundred feet thereof, and had made application at the United States Land Office for a patent therefor; and that plaintiff had filed a protest against the issuance of such patent. It prayed for judgment awarding the ownership and right of possession of the mining ground to itself, barring the adverse claim of defendant, and determining the rights of the parties as required under the act of congress of July 26th, 1866. The defendant by its answer denied the allegations of the complaint, set up ownership and right of possession in itself to the four hundred feet of ground in dispute; also set up the statute of limitations, and averred actual possession in itself and its grantors for more than five years, of the southerly three hundred and fifty feet of the ground claimed.

The cause was tried before a jury, and there was a verdict and judgment for defendant and against plaintiff. A motion for new trial made by plaintiff having been overruled, this appeal was taken from the order and from the judgment. "By the statute, where there is a jury trial, nobody but the district judge could legally ' settle ' a statement."

The facts necessary for an understanding 'of the points decided are stated in the opinion.

*Mitchell & Stone,* for Appellant.

I. Although the language used in the judge's certificate to the statement is not *verbatim et literatim* with the language of the statute, yet a substantial compliance therewith and with the intention of the legislature is quite apparent. All presumptions are in favor of the regularity of the proceedings in the court below, and of the official acts of the district judge. *Champion* v. *Sessions,* 2 Nev. 271; 4 Nev. 414; 9 Cal. 565. The presumption then is, that the statement was *settled* by the district judge, because the law does not authorize him to make certificate to a statement settled by any other person. To draw any other conclusion would necessarily impeach the integrity and learning of the judge who wrote the certificate, the judicial record of whom is sufficiently established to refute any such inference. A substantial compliance with the statute is all that is required. *Henderson* v. *Grewell,* 8 Cal. 583; *Van Pelt* v. *Littler,* 14 Cal. 196; *Cosgrove* v. *Johnson,* 30 Cal. 511; *Kidd* v. *Laird,* 15 Cal. 177.

II. Counsel reviewed the testimony, and claimed that the judgment was not supported by it.

III. There was error in permitting the witnesses to testify, against plaintiff's objection, to declarations made by the superintendent and others, as to the boundaries of the Overman claim. The declarations of an agent of a corporation are admissible and binding upon the corporation only when made within the scope of his authority. Here the superintendent was not authorized by his declarations to bind the company, because he was not an owner, and because he could not, within the scope of his authority as superintendent, bind the corporation by his declaration.

IV. The portion of the judge's charge marked " E " does not enunciate a correct principle of law, and therefore, necessarily, the jury must have been misled. It is true the court had charged that the rights of the parties were confined and limited to such ground and ledge as was originally located, claimed and acquired by the

locations and appropriations; but it had previously told the jury the only method under *the mining laws* by which a quartz ledge could be appropriated, that is, "persons are required by the mining laws *to establish* the boundaries denoting the claim on the ground, by planting stakes and recordation of a notice of the location," which instruction misstated the law and fact.   The jury was bound, under the foregoing instructions, to say : The principle of law declared prohibits us from considering the mining laws, the notice of location, the deeds to defendant, and from considering the testimony to show that the disputed ground lies within the distance claimed in plaintiff's notice of location ; and our duty, therefore, is simply to consider where the stakes were placed.

*R. S. Mesick*, for Respondent.

I.  There is no authenticated statement which the court can consider as ground for a reversal of the order denying a new trial. The certificate appended to what purports to be a statement, lacks all the elements requisite to prove the correctness of the statement, and leaves it destitute of all substantial authentication.  It does not purport to state who settled or engrossed the statement, or to state that the statement has been allowed by anybody, or to state that the statement is correct, or that it is not wholly false and incorrect.   The truth of the certificate is entirely consistent with the entire absence of truth and correctness in the statement.   The legal presumption is, that if the statement was settled by the judge and is correct, the certificate would have been made to state those facts, and that their omission from the certificate implies their nonexistence.   Our statute prior to 1869, like that of California prior to 1861, only required that the statement should be settled by the judge ; but the amended law there, as well as here, now requires that when the statement is settled by the judge, " the same shall be accompanied by his certificate that the same has been allowed by him and is correct."   A compliance with the terms of the statute must be affirmatively shown by the record.   *Linn* v. *Twist*, 3 Cal. 89 ; *Van Pelt* v. *Littler*, 14 Cal. 194 ; *Kidd* v. *Laird*, 15 Cal. 161 ; *Kimball* v. *Semple*, 31 Cal. 663; *Caples* v. *Central Pacific R. R. Co.*, 6 Nev. 271 ; *Howard* v. *Winters*, 3 Nev. 543 ; *Sher-*

*wood* v. *Sissa*, 5 Nev. 353 ; *McWilliams* v. *Hirschman*, 5 Nev. 263 ; *Caldwell* v. *Greely*, 5 Nev. 258 ; 32 Cal. 302 ; 25 Cal. 490, 491 ; *Ordway* v. *Conro*, 4 Wis. 45 ; *Hackett* v. *Bonnell*, 16 Wis. 471.

II. Counsel next made the point that the verdict was justified by the evidence, and presented a full abstract of the testimony and argued its effect.

III. There was no error in the admission of the evidence as to the acts and statements of the officers or agents of the Overman Company. That evidence was elicited and was clearly admissible for the purpose of rebutting the claim of plaintiff, made both in its complaint and in its proofs, that it and its predecessor had been in actual possession of the twelve hundred feet claimed, for more than five years ; and also admissible under the averments of the answer as to want of such possession in them. Technically, the plaintiff was bound to show an actual possession in itself when the suit was brought. *Pralus* v. *Jefferson Co.*, 34 Cal. 558 ; *Brooks* v. *Calderwood*, 34 Cal. 563.

IV. The portion of the charge marked " E" must be read and considered in connection with the balance of the charge ; and when so read it declares correct doctrine, and could not have misled the jury. The court just previously had limited the jury to the consideration of the original locations and appropriations under which the parties litigant claimed, and it is apparent from every line of the charge that it was devoted exclusively to limiting the jury to these original locations, and to explaining the principles by which their validity and priority were to be determined by the jury in making up their verdict. No one reading the whole charge could fail to understand and apply the language used exclusively to the subject matter of making these original locations. Therefore the meaning of this portion of the charge was, and was by the jury understood to be, that boundaries *established and defined by the locators* and by them long recognized cannot be disregarded. The instruction is consistent with the establishment of the southern boundary of the Overman location, at any point where the jury might believe from the evidence this boundary was originally established by the locators of the Overman claim.

By the Court, GARBER, J. :

The certificate to the statement reads : " I hereby certify that the foregoing is the settled and engrossed statement on motion for new trial of the above entitled cause.  Virginia, June 24th, 1871. Richard Rising, District Judge."  The respondent contends that this fails to show even a substantial compliance with the statute, which requires that, when a statement is settled by the judge, it shall be accompanied with his certificate that the same has been allowed by him, and is correct.

It is much better and safer to follow the very language of the statute, but the law does not exact such a literal compliance.  A substantial compliance entitles the statement to consideration, and such, we think, is here shown.  Allowing proper credit to the judge for official knowledge and fidelity, and giving proper effect to the legal presumption that he did his duty, it appears, from this certificate, that a statement was proposed by the plaintiff; that it was not satisfactory to the defendant, and that consequently amendments were filed ; that on due notice the judge considered the same, and passed upon the correctness and propriety of the respective claims and assertions of the parties in regard to what actually transpired at the trial, allowing such amendments as made the statement conform to the truth ; and that the document in question is a fair and correct copy of such statement as amended.  When the judge certifies that he has settled this statement, he in effect certifies that it is a true and correct statement.  The fair and reasonable presumption is, that, in settling it, he made it conform to the truth.  Construing the whole statute together, with reference to its general scope and object, it is evident that it was contemplated that where no amendments are filed, the truth of the statement proposed on motion for new trial is to be assumed.  In case of dispute as to its correctness, the judge is to decide, and his decision when made is prima facie correct.  The express requirement that the certificate shall affirm the correctness of the statement, does not preclude us from recognizing such presumptions as fairly arise from the language actually employed.  This has been frequently held in the analogous case of a certificate of the acknowledgment of a deed.  For instance,

the word "known" has been considered the equivalent of the words "personally known," on the ground that personal knowledge is implied, unless negatived by a further statement that such knowledge comes from information. The omission of the words "undue influence" has been held not to vitiate a certificate containing the other words required, and which, in themselves, negatived the existence of undue influence. So, where the statute required the certificate to state the acknowledgment of the party that he executed the deed freely and voluntarily, a certificate of his acknowledgment that he executed it was held sufficient, on the ground that the voluntary execution of the deed must be presumed from the fact that it was acknowledged that he executed the same. 22 Iowa, 147; 9 Mo. 522; 8 Cal. 87, 584; 13 Ib. 83; 26 Miss. 574; 4 Halsted, 226; 3 Dana, 114.

The only assignment of error which it is necessary to consider, is based upon the following exception: "The plaintiff excepted to the portion of the charge which reads: 'E. When boundaries have been established, defining and denoting the size and limits of the claim upon the surface, and for a long period of time have been recognized as such, the extent of the claim will be confined to the extent as manifested by such surface boundaries.'" The grounds stated were, that the instruction disregards the size and limits of the claim as located and recorded, and that the period of time mentioned is indefinite, and that it is not stated by whom such boundaries should have been recognized, and that the same was calculated to mislead the jury. The respondent contends "that this portion of the charge must be read and considered in connection with the balance of it; and, that when so read, it declares the correct doctrine and could not have misled the jury." We will consider it, then, in connection with the matter pertinent thereto disclosed in other portions of the record. The jury were instructed as follows: "The subject of controversy in this action is 400 feet of the quartz ledge described in the complaint. The matter of title and possession of this ground is the material issue submitted to your consideration. Persons designing to appropriate a mining claim are required by the mining laws to establish the boundaries, denoting the claim on the ground by planting stakes,

and the recordation of a notice of location, so that the public may be apprised of the particular claim made and its extent.   Each of the parties to this suit claims the disputed ground by virtue of locations of the quartz ledge made by their predecessors.   The rights of these parties are confined and limited to such ground and ledge as was *originally* located, claimed and acquired by the locations and appropriations.   You must ascertain and determine from the evidence what quartz ledge or ledges were originally located and claimed, and their rights will be in accordance.   The acts, declarations and works of the locators of the respective claims and all circumstances attending the locations can be taken into consideration by you, in passing upon this question.   If you should believe that the Overman claim was located for the ledge in controversy, as also that of the North American claim, and the locations conflict upon the ground, the superior and paramount location and possessory right will prevail, to the extent of the prior right in the party, as it existed at the time of the commencement of this suit."   Afterward, in the charge, occurs the portion " E " above set forth.

The plaintiff and the defendant claim respectively portions of the Comstock lode.   The northern boundary of the defendant's claim is the southern boundary of the plaintiff's claim.   The dispute is as to the locality of the dividing line.   The plaintiff introduced evidence tending to prove that, prior to the location of the defendant's claim, the predecessors of the plaintiff located the Overman; that they planted a southern stake far enough south to include the ground in controversy, and recorded a notice the description in which also included the disputed ground.   The defendant introduced testimony tending to show that said south stake of the Overman was not originally planted far enough south to embrace the disputed ground; and other testimony tending to show (or which a jury, thus instructed, may have believed themselves entitled to consider as evidence) that, even if it were originally so planted, what the defendant claims as the southern boundary of the Overman had been subsequently and prior to the commencement of this action, fixed and recognized as the true boundary line.

This testimony consisted, in part, of declarations made by successive superintendents and officers of the plaintiff. For example, McCullough testified that in 1869, just before he ceased to be superintendent, he supposed the south line had been fixed at a point excluding the disputed ground. The witness Hunt was asked by the defendant this question: "Did Mr. Arrington, the president of the Overman, at any time while such president, point out to you where the south stake of the Overman had been." The plaintiff objected to the question, on the ground that Arrington as president could not fix a boundary binding upon or affecting the Overman Company; that his declarations as to boundaries were unauthorized and incompetent to establish the boundaries or affect the title of the corporation. The objection was overruled, and the witness answered that Arrington pointed out the place as being at the locality for which the defendant contended. Similar objections were overruled to questions which elicited testimony showing that, long after the original location of the Overman, superintendents of the plaintiff pointed out the south boundary of its claim as being, at the times of the pointing out, where the defendant would have it. If the portion of the charge marked " E " applies to, or was apt to be understood by the jury to refer to any fixing or recognition of boundaries, occurring after the consummation of the original location and appropriation of the Overman, it was clearly so erroneous as to justify a reversal. No one would contend that, after a vested right to a mining claim has been acquired by a compliance with the laws, it is held by so precarious a tenure as that indicated, or that a corporation succeeding to such a right of property holds it as tenant at the will of its own superintendent and officers. But, in the light of the foregoing extracts from the record, the respondent contends that " the jury must have understood the court as referring to the original locators and *their* acts of defining boundaries, and consequently were not misled by this portion of the charge." In other words, the contention is, that this was merely a repetition of former portions of the charge. We think the inference is the other way. The plaintiff contended that it was entitled to all the ground called for by the recorded notice, irrespective of the position of the original stakes, and without regard to the question

whether any stakes were ever planted, defining the boundaries on the surface.  The first portion of the charge explicitly denied this proposition, and informed the jury that the plaintiff was entitled to no more ground than was originally located and segregated by the concurrent acts of planting stakes and recording a notice.  If the instruction had stopped here, the jury would have been at liberty to give to the plaintiff all the ground which, " by considering the acts, declarations and works of the *locators* of the respective claims, and all the circumstances *attending the locations,*" they should ascertain to have been embraced within the original location.  But the court goes further, and next tells them, in effect, that the right of the plaintiff is also limited by its extent, as it existed at the time of suit brought.  That is, that the right is not to be in accordance with the original location, but in accordance with the original location as modified by subsequent fixing and recognition of boundaries. For it was not pretended, nor was evidence introduced to show, that in any other way the extent of the claim had been reduced below its original dimensions.  And they are finally told, in unqualified language, that the extent of the claim must be confined within the boundaries as established and recognized no matter when, for how long, or by whom ; and this, after testimony almost if not quite as vague and indefinite as the terms of the instruction, and which might be construed as tending to show such a fixing and recognition of boundaries long subsequent to the original location had been admitted ; and against a specific objection, then and there made, that the instruction was liable to be misunderstood by the jury, as disregarding the size of the claim as located and recorded, and as giving effect to a temporary and casual recognition of such boundaries by unauthorized persons.  We cannot say, on this record, that the jury may not have understood this instruction to mean that although, by the original location, the plaintiff's predecessors acquired a right to the disputed ground, yet that if different boundaries (whenever or by whomsoever fixed or established) including less ground had been long recognized by successive officers of the plaintiff, such recognized boundaries must control ; and, for aught we know, they may have decided the case on this theory — thus giving effect to the whole charge, as imposing two distinct

limitations, neither of which could be disregarded in determining the extent of the claim; while, according to the respondent's construction of the charge, no effect whatever is given to the element of long recognition introduced by the portion under consideration. The question of the admissibility of the declarations of Arrington and others is of great practical importance, and has not been fully argued. The authorities seem to be against the admissibility of those of Arrington. *Vide* 13 Conn. 173; 48 Penn. 177; 14 Gray, 504; 9 Rich. (Law) 473. But we do not decide the point. For the error in overruling the objections made to instruction "E," the order appealed from is reversed, and the cause remanded for a new trial.

By WHITMAN, J., dissenting:

I think the objection to the statement is good, and should be sustained. For some reason, the legislature has provided not only that the judge shall certify that he has allowed a statement settled by him, but that he shall also state that it is correct. "When settled by the judge or referee, it shall be accompanied with his certificate that the same has been allowed by him, and is correct." Stats. 1869, 227. An exact compliance with the statute is easy, and certainly best; for although a substantial compliance would undoubtedly be sufficient, the difficulty occurs then that the peculiarities of judicial ratiocination decide what the statute, if exactly followed, definitely determines. As in the present case, the majority of the court deem the certificate attached to the statement a substantial compliance with the statute; while to me it bears no element of, or semblance to, such compliance. It does not state by whom it was settled, nor that it was ever allowed by the judge, nor that, as settled, it is correct, unless all and each of the elements constituting a statutory certificate are to be presumed. Everything which can be presumed in presence of this certificate can with equal propriety be inferred in the absence of any. It might possibly be a good rule to hold, that when any paper or collection of papers appear in a transcript, it shall be presumed that it or they were used on the hearing below, until the contrary appears affirmatively, by the affidavit of the objecting party; but such course

would certainly be to make law rather than to follow it, and would most probably result in harm rather than good.

It must be held, it seems to me, that the statute, in its minuteness, was intended to do away with presumptions in favor of the district court, which might otherwise have been properly indulged; and especially with that which would probably legally arise, that a statement is necessarily settled correctly when allowed by a judge; because it directs not only a certificate of allowance, but also of correctness.   The Supreme Court of California held, under a like statute, that a certificate by a district judge that a statement was correct according to his recollection, was no substantial compliance with the statute.   *Van Pelt* v. *Littler*, 14 Cal. 194.   See also *Cosgrove* v. *Johnson*, 30 Cal. 509.   This is a much stronger certificate than the one at bar.   It might with some force be said, that the words " according to his recollection " should be held superfluous, as a judge must always act according to his recollection in such matter, unless opposed by the record; but the decision is evidently based upon the idea that the words used weaken the assertion of correctness, and that the statute is to be strictly pursued.   Such (as I read) is the spirit of all the decisions in California and in this state; and though hardship may thereby occur in specific cases, yet exactitude of practice is the only sure road to substantial justice.   To consider the certificate here sufficient, is, I think, first to infer the fact of a settlement of the statement by the district judge; then upon the fact so inferred to raise the second inference, that upon such settlement followed his allowance; whence the final presumption of correctness.   This, to my mind, is to utterly ignore the statutory requirements.

If, then, there is no authenticated statement, there remains nothing for the review of this court but the judgment roll, upon which no error is suggested.   I therefore think the judgment should be affirmed; so thinking, I dissent from the judgment and opinion of the court.

# JOHN JAMES, Respondent, v. ANDREW GOODENOUGH et. als., Appellants.

IMMATERIAL VARIANCE BETWEEN PROOFS AND ALLEGATIONS. Where in an action for diverting the water of a certain creek, plaintiff alleged in his complaint that in June, 1865, and before the alleged diversion, he and one Epstein recorded a claim to all the waters of the creek, and within a reasonable time afterwards constructed a flume leading the waters to his land, and that he had acquired all the interest of Epstein; and on the trial plaintiff testified that he and one Jones constructed the flume in 1864, and in 1865 he and Epstein recorded the claim; and a motion by defendant to strike out the testimony on the ground that it did not conform to the allegations of the complaint was denied: *Held*, that there was no fatal variance and that the ruling was not error.

CORRESPONDENCE OF "ALLEGATA" AND "PROBATA" ONLY REQUIRED IN ESSENTIAL PARTICULARS. If the proofs in a case correspond with the allegations of the pleadings in respect to those facts and circumstances which are, in point of law, essential to the cause of action, it is sufficient.

IMMATERIAL ALLEGATIONS NEED NOT BE PROVED AS LAID. Immaterial allegations, such as probative facts not descriptive of some essential averment, need not be proved as laid.

IMMATERIAL AVERMENTS AS TO TIME OF ACTS DONE. Where, in a complaint for the diversion of the waters of a creek, it was alleged that plaintiff first recorded a claim to the water and afterwards constructed a flume for leading it to his land: *Held*, that, supposing the allegations to be material, it was immaterial which was prior in point of time, and that therefore a variance in the proof from the priority as alleged was equally immaterial.

NO CONSIDERATION OF INSUFFICIENCY OF EVIDENCE ON APPEAL WHERE NO MOTION FOR NEW TRIAL. Where there is no motion for new trial, the Supreme Court will not consider an objection that the findings are not justified by the evidence.

APPEAL from the District Court of the Second Judicial District, Douglas County.

This was an action against Andrew Goodenough, Samuel Bell and Edward Cassity, for diversion of the waters of Hartshorn Creek, in Douglas County, asking damages in the sum of five hundred dollars, and for an injunction to restrain further diversion. The court below found that the plaintiff and his grantors appropriated the waters of the creek in 1853, for irrigating purposes; that in June, 1865, he and Henry Epstein recorded a claim for seventy

inches of the waters of the creek, and appropriated such seventy inches of water by constructing a flume for conducting the same to his land; that the plaintiff was the owner and entitled to such water, and that the defendants had wrongfully diverted the same, and threatened to continue such diversion. There was a judgment in favor of plaintiff for one dollar damages, and for costs, and for a perpetual injunction restraining defendants from diverting or using any of the waters of the creek, except such as might be in excess of the seventy inches belonging to plaintiff. From this judgment the defendants appealed. There was no motion for a new trial.

. *T. W. W. Davies*, for Appellants.

I. The allegation of the construction of the flume subsequent to June, 1865, and the diversion and use of seventy inches of water through the same, are facts *essential* to the support of the action. It is a rule that the allegations and proofs must correspond; and the consequence of this rule is another, that evidence of a fact essential to the support of an action cannot be heard unless it be averred in the complaint. *Maynard* v. *F. F. Insurance Co.*, 34 Cal. 60; *Green* v. *Palmer*, 15 Cal. 415; *Graydon* v. *Gaddis*, 20 Ind. 518.

II. The objection to the variance between the complaint and the proofs was made in a stage of the trial when the court could have allowed an amendment; and therefore no objection can be urged that it was not in time. See *Ward* v. *Forrest*, 20 How. Pr. 465; *White* v. *Stillman*, 25 N. Y. 452.

III. Injury is presumed from evidence erroneously admitted, and the adverse party must show clearly that no injury accrued, or the judgment cannot stand. It is submitted that the court erred in admitting the testimony objected to, and that injury is presumed to have resulted to defendants thereby. *Soule* v. *Dawes*, 6 Cal. 473; *McCloud* v. *O'Neal*, 16 Cal. 32; 1 Cal. 462; 25 Cal. 471; 27 Cal. 568; 26 Cal. 130; 30 Cal. 394; 14 Cal. 18; 28 Cal. 539.

IV. In the cases holding that findings will not be reviewed on appeal, unless there is a motion for new trial, we have looked in vain for any sufficient reason to support the rule; and we speak of